IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 17-60566 |
| SLAMDUNK ENTERPRISES, INC. | § | |
| d/b/a SIGNAL WELL SERVICE, INC. | § | |
| | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |

| | | |
|---|---|---|
| STEVEN J. ZAYLER, | § | |
| CHAPTER 7 TRUSTEE | § | |
| | § | |
| V. | § | ADV. NO. 18-06006 |
| | § | |
| MIKEN OIL, INC., and | § | |
| LARRY MIKE TATE | § | |

**MOTION FOR SUMMARY JUDGMENT
OF MIKEN OIL, INC. AND LARRY MIKE TATE, INDIVIDUALLY**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW *Miken Oil, Inc.* ("Miken"), and *Larry Mike Tate*, Individually ("Tate"), Defendants (together the "Defendants" or "Movants") and files this their *Motion for Summary Judgment* (the "Motion"), against *Steven J. Zayler*, Chapter 7 Trustee ("Plaintiff" or "Trustee" or "Non-Movant") and would respectfully state and show as follows:

### I. Relief Requested

1.1. Defendants hereby file this Motion pursuant to Bankruptcy Procedure Rule 7056 and Federal Rule of Civil Procedure 56 and request that summary judgment be entered for Defendants against Plaintiff on the items listed below in the Statement of Issues.

1.2. Summary judgment shall be granted by the Court where there is no genuine dispute as to any material fact and the Movants are entitled to judgment as a matter of law. Fed.

R. Civ. Pro. 56(a) (Lexis 2019).

1.3. Plaintiff bears the burden of proof at trial in this case on his avoidance causes of action pursuant to (1) Sections 547 and 550 of Title 11 of the United States Code (the "Code") and Tex. Bus. & Com. Code § 24.006(b), (2) Sections 548 and 550 of the Code and Tex. Bus. & Com. Code §§ 24.005(a) and 24.006(a), on his cause of action (3) for turnover of alleged property of the bankruptcy estate pursuant to Section 542 of the Code, and on his cause of action (4) for unjust enrichment. Therefore, Movants may satisfy the Rule 56 burden of production either by submitting affirmative evidence to the Court which negates an essential element of the Plaintiff's claim, or by demonstrating that Plaintiff's evidence is insufficient to establish an essential element of his claim. *Celotex v. Catrett,* 477 U.S. 317, 331 (1986); see also *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

1.4. Defendants bear the burden of proof for any affirmative defenses raised. Therefore, concerning their affirmative defenses Movants may satisfy the requirements of Rule 56 by supporting their motion "with credible evidence--using any of the materials specified in Rule 56(c)--that would entitle it to a directed verdict if not controverted at trial." *Celotex*, 477 U.S. at 331; see also *Timmer v. Michigan Dept. of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997); and *Thom v. State Farm Lloyds*, 10 F.Supp.2d 693, 698 (S.D. Tex. 1997).

1.5. In support of this Motion, Defendants rely on Exhibits A through AA listed either in the Appendix of Summary and Default Judgment Evidence (the "Appendix") filed in conjunction with this Motion which is fully incorporated by reference herein. Plaintiff also relies on the other filings and documents of record in this Adv. No. 18-06006, as well as in Case No. 17-60566, In re Slamdunk Enterprises, Inc. (the "Slamdunk Bankruptcy"). Plaintiff also

relies on the Affidavit of Larry Mike Tate attached hereto and incorporated herein for all purposes as Exhibit AA.

## II. Statement of Undisputed Material Facts

2.1.  Slamdunk Enterprises, Inc. ("Debtor") filed its voluntary petition for relief under chapter 7 of the Code on August 1, 2017 (the "Petition Date") in Case No. 17-60566.  Plaintiff, Stephen J. Zayler is the chapter 7 trustee of Debtor's case.

2.2.  Debtor is a corporation under Texas law.  Prior to its bankruptcy filing Debtor did business under the name of "Signal Well Service" and performed services in the oilfield industry, primarily plugging and abandonment work.

2.3.  Miken is also a corporation under Texas law.  Miken is not a debtor in bankruptcy.  Miken is a production company in the oilfield industry operates a number of wells and working interests.

2.4.  Tate is the majority owner of Debtor and Miken.  Miken does not directly have any ownership interest in Debtor, nor does Debtor directly have any ownership interest in Miken.

2.5.  Both Debtor and Miken are treated for tax purposes as sub chapter S corporations pursuant to 26 U.S.C.S. § 1362(a).  For that reason, income or losses of Debtor and Miken are reported on the individual tax returns of Tate and accrue to his detriment or benefit.  See Appendix Exhibit A.

2.6.  Debtor's operations were not generally profitable and resulted in operating losses. These losses were reported to the Internal Revenue Service (the "IRS") on Debtor's Form 1120S returns as follows: ($565,278) in 2014, ($587,182) in 2015, and ($621,468) in 2016.  See Appendix Exhibits B, C, and D.  There were also some time periods when Miken suffered

operating losses.

2.7. Miken was a customer of Debtor, and from time to time provided financial assistance to Debtor which was accounted for on a "N/P" ledger from Debtor to Miken. By the end of 2016 this assistance totaled $1,612,771.07. See Appendix Exhibit E.

2.8. By the end of 2016 Debtor had fallen behind on payroll tax deposits to the IRS.

2.9. As shareholder of a sub chapter S corporation, Tate sought accounting advice regarding treatment of accumulated loss carryovers generated by Debtor's operations from Robert Pulliam, CPA. See Appendix Exhibit F. This advice was in addition to ongoing accounting advice generally provided by John Pope, CPA to Debtor, Tate, and Miken.

2.10. Tate was advised that accumulated loss carryovers generated by Debtor's operations could only be deducted on his personal tax return to the extent he had basis in Debtor. He was also advised that the losses would be suspended until he had basis and that basis is acquired either my making a capital contribution or a shareholder loan. See Appendix Exhibits F and G.

2.11. Debtor, Tate, and Miken all used bank accounts located at Austin Bank.

2.12. On December 30, 2016, Tate went in person to the Kilgore branch of Austin Bank. See Appendix Exhibit H. Using deposit and withdrawal forms with assistance from staff at Austin Bank, Tate initiated several circular contemporaneous transactions in order to have basis in the suspended losses for tax purposes. First, Miken made a shareholder distribution to Tate in the amount of $1,550,000.00, reflected by a withdrawal slip from Miken's account and a deposit slip into Tate's account. See Appendix Exhibits I and G. Then, Tate made a contribution to Debtor in the amount of $1,550,000.00, reflected by a withdrawal slip

from Tate's account and a deposit slip into Debtor's account. See Appendix Exhibit J and G. Finally, Debtor made a reduction in the accounting on the "N/P" ledger from Debtor to Miken in the amount of $1,550,000.00, reflected by a withdrawal slip from Debtor's account and a deposit slip into Miken's account. See Appendix Exhibits K, G, and E. The complete bank statements reflecting this circle are Appendix Exhibits L, M, and N.

2.13. Neither Debtor, Tate, nor Miken had $1,550,000.00 sitting in an account at Austin Bank on December 30, 2016. See Appendix Exhibits L, M, and N.

2.14. The result of these circular contemporaneous transactions was that Tate acquired basis in the suspended losses such that they could be deducted on his personal income tax return. See Appendix Exhibits G, O, P, and Z.

2.15. On April 24, 2017, Tate filed an IRS Form 1045 Application for Tentative Refund in his personal capacity which sought a refund of $407,114.00. See Appendix Exhibit O. However, only $304,981 of this refund was due as a result of the circular contemporaneous transactions pertaining to Debtor. See Appendix Exhibits P and Q.

2.16. The IRS paid Tate a refund of $407,114. See Appendix Exhibit R.

2.17. Tate paid part of the refund to Debtor for use to satisfy Debtor's then outstanding payroll tax obligations of $182,218.73. See Appendix Exhibit S.

2.18. Tate also used the refund to satisfy various other outstanding debts of Debtor including to ETOS, Inc. ($10,803.29), Lafarge North America ($69,812.48), Oil Patch Pipe and Supply, Inc. ($18,956.05), and United Rentals (North America), Inc. ($14,004.00). See Appendix Exhibits T, U, V, W, X and Y.

2.19. The sub chapter S treatment election of both Debtor and Miken has not been

rescinded or terminated.   See Appendix Exhibit A.

2.20.   Plaintiff filed the above styled and numbered Adversary (the "Adversary") on September 9, 2018.

2.21.   Plaintiff alleges in his Complaint that Debtor transferred to Defendants (1) $1,550,000.00 and (2) Debtor's tax attributes with an approximate value of $511,000.00, and that these alleged "transfers" should be avoided.   Plaintiff seeks avoidance using (1) a preference theory under 11 U.S.C. § 547, and fraudulent transfer theories under (2) Tex. Bus. & Com. Code § 24.006(b), (3) 11 U.S.C. § 548, and (4) Tex. Bus. & Com. Code §§ 24.005(a) and 24.006(a).   Plaintiff also appears to seek recovery of these amounts under an unjust enrichment theory.

### III.  Statement of Issues

3.1.   Defendants request that summary judgment be entered on their behalf against Plaintiff because no genuine issue of material fact exists on the following issues:

- A. <u>No Interest in Property</u>.   No interest in Debtor's property was transferred to Defendants.

- B. <u>Tax Attributes Not Estate Property</u>.   Debtor's tax attributes are property of its shareholders, not the Trustee.

- C. <u>Contemporaneous Exchange for New Value / Reasonably Equivalent Value</u>.   The December 30, 2016 transactions of which Trustee complains were contemporaneous and for equivalent value.

- D. <u>No Damage to the Debtor</u>. Debtor was not harmed by the December 30, 2016 transactions, was no worse off afterwards, and was ultimately

benefitted because the resulting refund help satisfy debts of Debtor including priority tax claims.

### IV. Arguments and Authorities

#### A. No Interest in Property

4.1. Defendant, Miken Oil, Inc., and Defendant, Larry Mike Tate, Individually, should not be liable to Trustee because no interest in Debtor's property was transferred to either of them.

4.2. To prevail on his Section 547 preference cause of action the trustee "may avoid any transfer of *an interest of the debtor in property*

   (1)   to or for the benefit of a creditor;
      (2)   for or on account of an antecedent debt owed by the debtor before such transfer was made;
      (3)   made while the debtor was insolvent;
      (4)   made—
           (A)   on or within 90 days before the date of the filing of the petition; or
           (B)   between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
      (5)   that enables such creditor to receive more than such creditor would receive if—
           (A)   the case were a case under chapter 7 of this title;
           (B)   the transfer had not been made; and
           (C)   such creditor received payment of such debt to the extent provided by the provisions of this title."

[emphasis added] 11 U.S.C. § 547(b) (Lexis 2019).

4.3. To prevail on his Section 548 cause of action the trustee may only "avoid any transfer . . . *of an interest of the debtor in property*, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition . . ." [emphasis added] 11 U.S.C. § 548(a) (Lexis 2019).

     4.4.    Trustee's authority to assert state law causes of action against Defendants pursuant Tex. Bus. & Com. Code § 24.006(b), or Tex. Bus. & Com. Code §§ 24.005(a) and 24.006(a) is derived from 11 U.S.C. § 544. "In essence, § 544 allows the trustee to step into the shoes of a creditor for the purpose of asserting causes of action under state fraudulent conveyance laws and confers on the trustee the status of a hypothetical creditor or bona fide purchaser as of the commencement of the case." *Gaudet v. Babin*, 103 F.3d 1195, 1201 (5th Cir. 1997). Use of this avoidance power under § 544(a) requires as a prerequisite that there be a "transfer of *property of the debtor* or any obligation incurred by the debtor . . ." [emphasis added] 11 U.S.C. § 544(a) (Lexis 2019). Use of this avoidance power under § 544(b), requires as a prerequisite that there be a "transfer of an interest *of the debtor* in property or any obligation incurred by the debtor . . ." [emphasis added] 11 U.S.C. § 544(b) (Lexis 2019).

     4.5.    To prevail on his unjust enrichment cause of action the Trustee must show that Defendants received "benefits" unjustly. This is because unjust enrichment "is an equitable theory that provides for the person receiving benefits unjustly to make restitution for those benefits." *Barclay v. Richey*, No. 09-17-00026-CV, 2019 Tex. App. LEXIS 456, at *17 (Tex. App.– Beaumont 2019, no pet), citing *Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.–Dallas 2009, pet. denied). "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Trustee must show that Defendants "wrongfully secured or passively received a benefit it would be unconscionable to maintain." *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.--San Antonio 2004, pet. denied).

4.6. Therefore, it is clear all the causes of action asserted by the Trustee require as a prerequisite the transfer of property of the Debtor. Similarly, unjust enrichment requires that "benefits" of Debtor were transferred to Defendants. Under the facts of this case no transfer of property *of the Debtor* occurred as required and so the Trustee's causes of action must fail.

4.7. Debtor never transferred $1,550,000 to Defendants. The December, 2016 beginning balance for each of the Austin Bank accounts which participated in the contemporaneous circular transactions was well below $1,550,000.00. The last statement balance of Miken's Austin Bank account prior to December, 2016 when the contemporaneous circular transactions occurred was $20,414.30. See Appendix Exhibit L. The last statement balance of Tate's Austin Bank account prior to December, 2016 when the contemporaneous circular transactions occurred was $864.14. See Appendix Exhibit M. The last statement balance of Debtor's Austin Bank account prior to December, 2016 when the contemporaneous circular transactions occurred was $34,369.26. See Appendix Exhibit N. Therefore, neither Debtor, Tate, nor Miken had $1,550,000.00 in cash at Austin Bank to transfer on December 30, 2016 as Trustee alleges. Debtor did not have the ability on December 30, 2016 to transfer that which it did not own or possess. None of the Debtor's account balance was transferred to or for the benefit of either of the Defendants.

4.8. Furthermore, no transfer of Debtor's tax attributes occurred because by operation of law such tax attributes are owned by its shareholders. Similarly, any refund payable to the shareholders would not be property of the Debtor because the tax attributes are owned by the shareholders not the Debtor. Therwforw, the December 30, 2016 transactions simply do not implicate the Trustee's avoidance powers. "If the debtor transfers property that would not have

been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated." *Begier v. IRS*, 496 U.S. 53, 58 (1990). This tax analysis is discussed in the following section of the Motion.

  4.9. Therefore, the causes of action of the Trustee must fail because there is no genuine issue of material fact that no transfer of property of the Debtor occurred.

B. <u>Tax Attributes Not Estate Property</u>

  4.10. There is no genuine issue of material fact that the tax attributes of Debtor are not property of the estate due to Debtor's treatment as a sub chapter S corporation.

  4.11. Debtor is as a sub chapter S corporation for tax purposes. See Appendix Exhibit A. S corporations are not subject to federal income tax at the entity level. 26 U.S.C. § 1363(a) (Lexis 2019). See also *Taproot Admin. Servs., Inc. v. Commissioner,* 133 T.C. 202, 204 (2009), aff'd, 679 F.3d 1109 (9th Cir. 2012).

  4.12. S corporations pass corporate income, losses, deductions, and credits to shareholders for federal tax purposes. "Instead, an S corporation's items of income, gain, loss, deduction, and credit--whether or not distributed--flow through to the shareholders, who must report their pro rata shares of such items on their individual income tax returns for the shareholder taxable year within which the S corporation's taxable year ends. *Dalton v. Commissioner*, No. 11987-13L, 2017 Tax Ct. Memo LEXIS 43, at *8-9 (T.C. 2017). See also 26 U.S.C. § 1366(a); *Mourad v. Commissioner*, 121 T.C. 1, 3 (2003), aff'd, 387 F.3d 27 (1st Cir. 2004); *Dunne v. Commissioner,* No. 24666-05, 2008 Tax Ct. Memo LEXIS 63 (T.C. 2008); 26 C.F.R. § 1.1366-1(a), Income Tax Regs.

  4.13. The sub chapter S treatment election of Debtor has not been rescinded or

terminated. A shareholders' election to take S corporation status remains in effect until it is terminated under 26 U.S.C. § 1362(d). See 26 U.S.C. § 1362(c) (Lexis 2019). There are three ways in which a termination may occur: (1) if more than fifty percent of the corporation's shareholders vote to revoke the election; (2) if the business ceases to be a "small business corporation," or (3) if the business's passive investment income exceeds 25 percent of gross receipts for three consecutive years (and the business earned profits each of those years). See 26 U.S.C. § 1362(d) (1), (2), (3) (Lexis 2019). None of these have occurred with respect to Debtor nor does Trustee allege that Debtor's sub chapter S treatment has terminated.

4.14. Bankruptcy does not alter the sub chapter S treatment of Debtor. "The filing of a bankruptcy case by the corporation does not alter its tax status or that of its shareholders." *In re Carolina Internet, Ltd.*, No. 11-32461, 2012 Bankr. LEXIS 3147, at *8-9 (Bankr. W.D.N.C. 2012), also citing *Pants Rack, Inc. v. U.S.*, 669 F.2d 198 (4th Cir. 1982); *Mourad v. Comm'r*, 387 F.3d 27 (1st Cir. 2004); *Official Comm. Of Unsecured Creditors of Forman Enters. v. Forman*, 281 B.R. 600 (Bankr. W.D. Pa. 2002); *Hanrahan v. Walterman*, 2006 Bankr. LEXIS 921 (Bankr. N.D. Iowa May 22, 2006).

4.15. A limited exception to this analysis exists with respect to some debtors who file cases under chapter 7 or chapter 11. See 26 U.S.C. §1398(g) (Lexis 2019). Trustee cites this exception in his Complaint in support of his causes of action. If applicable this exception operates to allow the bankruptcy estate to succeed to certain tax attributes of a debtor. *Id*. However, this exception is only applicable to chapter 7 or 11 cases filed by an *individual* debtor. "Except as provided in subsection (b), this section shall apply to any case under chapter 7 (relating to liquidations) or chapter 11 (relating to reorganizations) of title 11 of the United States

Code *in which the debtor is an individual*" [emphasis added]. See 26 U.S.C. §1398(a) (Lexis 2019). Debtor is not an individual and so the exception is inapplicable.

4.16. Finally, no separate taxable estate was created by Debtor's bankruptcy filing. This is because "Except in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a case under title 11 of the United States Code." 26 U.S.C. §1399 (Lexis 2019). Section 1398 is inapplicable to Debtor because Debtor is not an individual. 26 U.S.C. §1398(a) (Lexis 2019).

4.17. Thus, Tate as a shareholder of an S corporation must report the flow-through of income and losses from Debtor on his personal tax return and pay assessed tax. Alternatively, Tate is also entitled to receive as an individual any resulting refund. That is what happened in this case with respect to the alleged transfers sought to be avoided by Trustee. Tate is responsible for the benefits as well as the burdens of the sub chapter S treatment of Debtor.

4.18. This analysis is not controversial. In a case with similar facts, the 1st Circuit found that a shareholder was responsible for tax liability from pass-through income generated by a sub chapter S corporation which was a debtor in a Chapter 11 bankruptcy proceeding. See *Mourad v. Commissioner*, 387 F.3d 27 (1st Cir. 2004). In *Mourad*, a corporate Debtor owned an apartment complex. After filing Chapter 11, the apartment complex was sold resulting in the assessment of income tax liability against the shareholder. *Id.* at 28. Debtor at all relevant times was a subchapter S corporation under the Internal Revenue Code. *Id.* The shareholder contested his responsibility for the income tax generated by the sale of the apartment complex. The 1st Circuit ruled that the shareholder was responsible for the tax liability because debtor was a subchapter S corporation. *Id.* at 31. In this case Trustee makes a similar argument to the

shareholder in *Mourad*. The difference between *Mourad* and this case is that Trustee seeks to recover a shareholder's refund resulting from a subchapter S corporation's losses, rather than to avoid tax liability resulting from a subchapter S corporation's income. It is doubtful Trustee would fail to consider Tate responsible for any tax liability passed through from Debtor. A tax refund should not be treated differently.

4.19. As further explanation of the application of these tax rules and as additional support for this Motion, the Expert Report of James H. Gomillion, CPA is attached together with his resume. See Appendix Exhibit P.

4.20. Therefore, no genuine issue of material fact exists that tax attributes of the Debtor, as well as items of income, gain, loss, deduction, or credit--whether or not distributed--flow through to Tate as shareholder and are not owned by Trustee.

    C.  <u>Contemporaneous Exchange for New Value / Reasonably Equivalent Value</u>

4.21. There is no genuine issue of material fact that the December 30, 2016 circular transactions of which Trustee complains were both contemporaneous exchanges for new value and because of their circular nature were for equivalent value.

4.22. The Code contains a defense to asserted preference actions "to the extent that such transfer was– (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." 11 U.S.C.§ 547(c)(1) (Lexis 2019).

4.23. This Court has stated the following with respect to the defensive contemporaneous exchange for new value:

"'The purpose of the exception is to encourage creditors to continue to deal with troubled

debtors, and transfers protected under § 547(c)(1) are not preferential because other creditors are not adversely affected if the debtor's estate receives new value.' *Official Comm. of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Serv., Inc. (In re 360networks (USA) Inc.),* 338 B.R. 194, 204 (Bankr. S.D.N.Y. 2005) (citing *Jones Truck Lines, Inc. v. Central States, S.E. and S.W. Areas Pension Funds (In re Jones Truck Lines, Inc.),* 130 F.3d 323, 326 (8th Cir.1997). This affirmative defense 'is grounded in the principle that the transfer of new value to the debtor will offset the payments, and the debtor's estate will not be depleted to the detriment of other creditors.' *Lovett v. Homrich, Inc. (In re Philip Servs. Corp.),* 359 B.R. 616, 632 (Bankr. S.D. Tex. 2006) (emphasis added) (citing *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (In re Fuel Oil Supply & Terminaling, Inc.),* 837 F.2d 224, 228 (5th Cir.1988)). In other words, the transfer is protected from avoidance because it has caused no net economic harm to the bankruptcy estate. *Post-Confirmation Comm. v. Tomball Forest, Ltd. (In re Bison Bldg. Holdings, Inc.),* 473 B.R. 168, 175 (Bankr. S.D. Tex. 2012) (citations omitted) ['The purpose of the contemporaneous exchange exception is to protect transactions that do not result in a diminution of the bankruptcy estate. If new value is given, a contemporaneous exchange does not diminish the estate.']."

*Moser v. Bank of Tyler*, 513 B.R. 682, 710-11 (Bankr. E.D. Tex. 2014). The circular transactions on December 30, 2016 "caused no net economic harm to the bankruptcy estate" and did not "diminish the estate."

4.24. To demonstrate the contemporaneous exchange for new value defense, Defendants need demonstrate: "(1) the transfer was for new value given to the Debtor; (2) the parties intended the new value and the reciprocal transfer by the Debtor to be a contemporaneous exchange; and (3) the exchange was in fact substantially contemporaneous." *Id*.

4.25. The transactions on December 30, 2016 were circular in nature. This means that Debtor, Miken, and Tate each had a withdrawal slip and a deposit slip in the amount of $1,550,000.00 entered in each of their respective Austin Bank accounts. See Appendix Exhibits I, J K, L, M, and N. Each account which received a deposit of $1,550,000.00 also had a withdrawal of $1,550,000.00 and vice versa. No party, including Debtor, had only a withdrawal slip of $1,550,000.00. Therefore, new value was given to the Debtor in the same amount of the

"transfer" alleged by Trustee.

4.26. Debtor, Miken, and Tate each intended the December 30, 2016 transactions to be reciprocal in nature and to be a contemporaneous exchange. Tate accomplished the December 30, 2016 transactions simultaneously in person at the Kilgore branch of Austin Bank. See Appendix Exhibit H. No part of the December 30, 2016 transactions would have occurred absent all the December 30, 2016 transactions being completed.

4.27. The December 30, 2016 transactions were in fact substantially contemporaneous. The entire circle occurred on the same day, at the same time, at the same location, in a single visit to Austin Bank. See Appendix Exhibit H. Each was also reflected on the relevant bank statement as occurring on December 30, 2016. See Appendix Exhibits L, M, and N. As a result the December 30, 2016 circular transactions are contemporaneous exchanges for new value.

4.28. For similar reasons the Trustee's § 548 and Tex. Bus. & Com. Code §§ 24.005(a)(2) and 24.006(a) causes of action are without merit. Each of these avoidance causes of action require trustee to show that Debtor failed to receive a "reasonably equivalent value in exchange" for the transfer alleged to be avoidable. See 11 U.S.C.§ 548(B)(i) (Lexis 2019); Tex. Bus. & Com. Code §§ 24.005(a)(2) and 24.006(a) (Lexis 2019). Here Debtor, Miken, and Tate each had a withdrawal slip and a deposit slip in the amount of $1,550,000.00 entered in their respective Austin Bank accounts. See Appendix Exhibits I, J, K, L, M, and N. No one, including Debtor, withdrew $1,550,000.00 without receiving an equivalent deposit.

4.29. There is no genuine issue of material fact that the December 30, 2016 circular transactions were contemporaneous exchanges for new value such that the Trustee's § 547 cause of action fails. There is also no genuine issue of material fact that because of their circular nature

the December 30, 2016 were equivalent exchanges of values such that the Trustee's § 548 and Tex. Bus. & Com. Code §§ 24.005(a)(2) and 24.006(a) causes of action fail.

### D. No Damage to the Debtor

4.30.   There is no genuine issue of material fact that the Debtor suffered no damages and was no worse off after the December 30, 2016 circular transactions.   Rather, Debtor was benefitted by Tate's use of his tax refund to help reduce debts of Debtor.

4.31.   As set forth above, no net money was transferred from Debtor's account to Defendants.   The December 30, 2016 transactions were circular in nature, and Debtor did not have $1,550,000.00 to transfer out to Defendants.

4.32.   Similarly, because Debtor is a subchapter S corporation for federal tax purposes any refund would be property of Tate as its shareholder rather than property of Debtor.

4.33.   Debtor was no worse off than it otherwise would have been after the December 30, 2016 transactions. See the Expert Report of James H. Gomillion, CPA attached together with his resume; Appendix Exhibit P.   See also the analysis of John Pope, Defendants' CPA, explaining alternative tax treatment and refunds to Tate in the event the December 30, 2016 transactions had not occurred.   See Appendix Exhibit Z.

4.34.   Nevertheless, Tate used the refund obtained to pay obligations of Debtor including the unpaid outstanding payroll tax liability of $182,218.73.   See Appendix Exhibits S, T, U, V, W, X and Y.   Debtor was better off after the December 30, 2016 transactions as a result than it otherwise would have been.

4.35.   Therefore, there is no genuine issue of material fact that Debtor suffered no damages and was no worse off after the December 30, 2016 circular transactions.

## V. Conclusion

5.1. Defendants urge that the Court grant summary judgment as requested in this Motion for the reasons set out herein.

5.2. Specifically, there is no genuine issue of material fact that no transfer of property *of the Debtor* occurred.

5.3. Similarly, there is no genuine issue of material fact that tax attributes of the Debtor flow through to Tate and are not owned by Trustee.

5.4. There is no genuine issue of material fact that the December 30, 2016 circular transactions were both contemporaneous exchanges for new value such and were for equivalent value.

5.5. Finally, there is no genuine of material fact that Debtor suffered no damages because of the December 30, 2016 circular transactions, nor did its creditors.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants, Miken Oil, Inc., and Larry Mike Tate, Individually, jointly pray for an order granting this Motion and entering summary judgment on their behalf that (1) no interest in Debtor's property was transferred to Defendants, (2) Debtor's tax attributes are property of its shareholders not the Trustee, (3) the December 30, 2016 transactions of which Trustee complains were both contemporaneous exchanges for new and for equivalent value, (4) Debtor was not harmed by the December 30, 2016 transactions, and (5) for such other and further relief to which they may be entitled.

DATED November 14, 2019.

Respectfully submitted,
*SEARCY & SEARCY, P.C.*

/s/ Joshua P. Searcy
JOSHUA P. SEARCY
State Bar No. 24053468
E-Mail : joshsearcy@jrsearcylaw.com
CALLAN CLARK SEARCY
State Bar No. 24075523
E-Mail : ccsearcy@jrsearcylaw.com
P. O. Box 3929
Longview, TX   75606
903/757-3399 TEL
903/757-9559 FAX
ATTORNEYS FOR MIKEN OIL, INC.

AND

PATRICK KELLEY, PLLC

112 E. Line Street, Suite 203
Tyler, Texas 75702
Tel: (903) 630-5151
Fax: (903) 630-5760
E-mail: pat@patkelleylaw.com

*/s/ Patrick Kelley*
Patrick Kelley
State Bar No.11202500
ATTORNEYS FOR LARRY MIKE TATE

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been forwarded via electronic mail, if available, and/or by regular mail, postage prepaid to Scott Ritcheson, Ritcheson, Lauffer & Vincent, P.C., Two American Center, 821 ESE Loop 323, Suite 530, Tyler, TX 75701 on or before November 14, 2019.

*/s/ Joshua P. Searcy*
Joshua P. Searcy